## THE PEOPLE, use, etc.

### v.

## THOMAS A. WILSON.

1. EVIDENCE—THINGS JUDICIALLY NOTICED.—Courts will take judicial notice of the charter or incorporating act of a municipal corporation, without it being specially pleaded, not only when it is declared to be a public act, but when it is public or general in its nature. So, where the original charter of a town provided that it should take effect when accepted by a vote of the citizens, and an amendatory act was subsequently passed, wherein the incorporation of the town was expressly referred to, the latter act being declared to be a public act, it was held that the charter granted by the original act was virtually declared to have been accepted by the citizens of the town, and of this courts would take judicial notice.

2. AVERMENT OF INCORPORATION.—An averment in the declaration that the appellee was collector of the town of H., and as such collector received the collector's books and did collect the taxes extended on the books of said town against persons residing *within the incorporate limits of the town of F.*, is a sufficient averment, on demurrer, that the town was possessed of corporate powers.

3. HIGHWAY TAX—To WHOM PAID.—The tax for road purposes levied upon property within the limits of corporations, under the provisions of the second clause of Section 81, Chap. 121, Rev. Stat. should be paid over to the treasurer of such village. The phrase "tax levied for road purposes," includes all taxes collected for the payment of damages arising from opening and laying out roads, the purchase of materials for constructing and repairing roads and bridges, etc., as well as that "for the making and repairing of roads only."

APPEAL from the County Court of Clay county; the Hon. W. P. MURPHY, Judge, presiding.

Mr. RUFUS COPE, for appellant; as to the incorporation of the town, cited Private Laws, 1867, Vol. 3, 421; Private Laws, 1869, Vol. 4, 284.

That the inhabitants of such town are exempt from working on the roads: Private Laws, Vol. 3, 427.

The tax collected on property within the village should be paid over to the treasurer of the village: Laws of 1877, Act in regard to Roads and Bridges, §§ 81, 82, 83, 84; Baird v. The People, 83 Ill. 387; Rev. Stat. 916, §§ 17, 18, 43; Rev. Stat. 932, § 120.

Mr. B. B. SMITH and Mr. G. A. HOFF, for appellee.

TANNER, P. J.   This was an action of debt, instituted in the name of the People of the State of Illinois to the use of the town of Flora, against the appellee on his official bond, as township collector of revenue.   The sufficiency of the declaration was questioned upon general demurrer, in two respects.   First: that it did not aver that the town had ever become incorporated.   By an act of the General Assembly, in force February 27th, 1867, P. L. 23, p. 421, a special charter was granted to the inhabitants of the town of Flora, which was to become operative only upon being submitted to a vote of the citizens of the town.   The act itself did not confer corporate powers, but enabled the citizens to acquire such at their election, in the manner specified in the act.   This was declared to be a public act. We find, however, that the General Assembly in 1869, P. L. 24, p. 284, passed an act amendatory of the act to incorporate the town of Flora, in force February 27th, 1867, in which the acceptance of the charter is clearly recognized.   The 2nd section of the amendatory act provides that " all taxes heretofore levied by the incorporate authorities of said town remaining unpaid, shall be due and payable, and the town clerk of said town shall certify to the county clerk of Clay county all such taxes as appear by the records of said town to be unpaid; and said county clerk shall thereupon extend the same upon the tax books of the town of Harter, to be collected as other taxes: and all contracts or obligations heretofore entered into by or with the town of Flora, and all transactions under and by virtue of the charter or ordinances of said town, shall be valid and binding as though the boundaries thereof had been correctly described in said act of incorporation; and all ordinances of the town of Flora shall be and remain in force in said town as above described, until repealed according to law."   Section seven declares the amendatory act to be a public act, and to be in force from and after its passage.   Thus the charter granted by the original act was virtually declared to have been accepted by the " citizens " of the town of Flora; and of this fact the courts were required to take judicial notice.   " Courts will take

judicial notice of the charter or incorporating act of a municipal corporation without being specially pleaded, not only when it is declared to be a public statute, but when it is public or general in its nature or purposes, though there be no express provision to that effect." Dillon on Mun. Cor. Sec. 50. "Courts are bound *ex officio* to take notice of public acts without being fully set forth, to give them full effect so soon as they are called to their attention." Sedg. St. and Const. Law, 34. We are therefore of the opinion that the pleader was not required to aver the existence of the corporation.

But aside from this view, we think the declaration contains a substantial averment that the town was incorporated. It avers that the appellee was collector of the town of Harter, in Clay county, and as such had given bond and entered upon the discharge of his duties; as such received the collector's books, and did collect the taxes extended on the books of said town, against persons residing within the incorporate limits of the town of Flora. These facts are admitted by the demurrer, and they are equivalent to an averment that the town was possessed of corporate powers. We next approach a question also raised by the demurrer, of greater difficulty, perhaps, and the main one involved in this controversy. Should the tax collected under and by virtue of the 2nd clause of the 81st section of the act in relation to roads and bridges in counties under township organization, in force July 1st, 1877, be paid to the treasurer of the commissioners of highways; or should so much thereof as is raised from property existing within the corporate limits of towns and cities having charge of the improvement of bridges, streets and alleys therein, be paid over to the treasurer of such towns and cities? This question was raised and settled adversely to the position of the appellee in this case, in Baird v. The People, etc. 83 Ills. 387. And unless the law has undergone a change in this respect, the construction there given in the act then in force, will be decisive of the case before us. The act now in force is a complete revision of Chap. 121, R. S. 1874, so far as relates to counties under township organization; and the first and second clauses of Sec. 81 of the present act, with some

changes, compose Secs. 16 and 120 respectively, of the former act. It is not urged that the second clause of Sec. 81 changes Sec. 120 of the old act, so as to bear materially upon the point raised. But it is insisted, in substance, that the changes made in Sec. 16, in forming the first clause of Sec. 81, and applying Sec. 84 of the present act, it then becomes manifest that the General Assembly designed to change the law as expounded in Baird's case. To ascertain what force there is in this view, we give Sec. 16 and the first clause of sec. 81 in full:

Sec. 16. "The commissioners of highways shall assess a road tax on all real and personal property liable to taxation of the town, to any amount they may deem necessary, not exceeding forty cents on each one hundred dollars worth, as valued on the assessment roll of the previous year: *provided*, that the tax on property lying within any incorporated village, town or city in which the streets and alleys are under the care of the corporation, shall be paid over to the treasurer of such village, town or city, to be appropriated to the improvement of roads, streets and bridges, under the direction of the corporate authorities."

First clause § 81:

"*First*. The commissioners of highways of each town shall annually ascertain, as near as practicable, how much money must be raised by tax on real and personal property for the making and repairing of roads only, to any amount they may deem necessary, not exceeding forty cents on the one hundred dollars' worth, as valued by the assessment roll of the previous year, and certify the same as hereinafter provided: *Provided*, That the tax on the property levied for road purposes, lying within an incorporated village, town or city, in which the streets and alleys are under the care of the corporation, shall be paid over to the treasurer of such village, town or city, to be appropriated to the improvement of the roads, streets and bridges, either within or without said village, town or city, and within the township, under the direction of the corporate authorities of such village, town or city: *Provided*, further, that when any of said tax is expended beyond the limits of said village, town or city, it shall be with the consent of the road commissioners of the township."

The changes which we deem necessary to notice are that where § 16 provided for levying a "road tax," and that the tax on property lying within incorporated towns and cities should be paid to the treasurers of such towns and cities. The first clause of § 81 provides for raising a tax for the "making and repairing roads only," and that the tax on property levied for road purposes lying within an incorporated town or city *
* * shall be paid to the treasurer of such town or city."
By an examination of our system for working and keeping in repair the public roads, as developed by past legislation, it will be found that the phraseologies "road tax" and a tax for "making and repairing roads only," are identical in scope and meaning, and have reference to the ordinary working and repairing of roads. This view is not combatted.

But it is strenuously contended that the expression for "road purposes," has reference solely to the tax raised from property lying within the corporate limits of towns and cities, for the purpose of "making and repairing roads only," and therefore does not embrace any portion of the tax raised, by virtue of the 2nd clause of Sec. 81.

We have reached, after a careful examination of this view, a different conclusion. If the General Assembly had only de- signed that the tax assessed for the "making and repairing of roads only," should be paid to towns and cities in which the property existed from which the tax was raised, we are unable to discover the least reason for the change of the language of section 16 of the act repealed by the law now in force. Words more apt than those there used to express such intention can- not be found. After requiring the commissioners of highways to assess a road tax on all the real and personal property in the town or city, this proviso follows: "Provided that the tax on property lying within an incorporated town or city * * * shall be paid over to the treasurer of such town or city." As sections 16 and 120 of the former act were wholly independ- ent of each other, the only tax that could have been paid to the town or city treasurers, under the proviso of section 16, was that which was denominated "a road tax," in the first part of the section. In Baird's case it was held that the tax raised

The People v. Wilson.

under section 120 of the act, from property lying within in-
corporated towns and cities, should be paid to the treasurers of
such towns and cities, as well as that raised under section 16
of the act then in force.   As already stated, these two sections
in the order observed in the old act, are united in the present
act and form one section, and provide for collecting taxes for
the same purposes and from the same sources.   Then the
phraseology of the proviso in the first part of the section was
altered so as to become more comprehensive than it was in the
repealed act, in order to embrace the tax raised under both
clauses of the section.   The phrase "the tax levied for road
purposes," includes all taxes collected for the payment of
damages arising from opening and laying out new roads, the
purchase of materials for constructing and repairing roads and
bridges, and of machinery for working upon the same, as well
as that assessed and collected for the " making and repairing
of roads only."

"A tax for the making and repairing of roads only," is a
part of the tax collected for " road purposes," and although the
first expression, in an abstract sense, may be considered quite
as comprehensive as the second, the legislature has seen proper
to give it a more circumscribed meaning.   The expression "for
road purposes," however, we hold comprehends every step
towards the making and improving roads and bridges, as pro-
vided for in section 81, and it seems clear that the most com-
prehensive terms are used in the present act for the purpose of
avoiding the necessity of judicial construction.   Again, it
seems, if the intention of the law-maker was that the taxes
provided in the first and second clauses of section 81, should
be paid respectively to the treasurers of towns and cities, and
to the treasurers of the commissioners of highways, the law
would have provided for a separate extension of such taxes on
the tax books.   But the whole of the tax to be collected under this
section is certified in the aggregate by the supervisors to the
county clerks, and they are required to extend such as one tax
in a separate column against each tax-payer.   There the collector
pays over all the taxes collected for road purposes from prop-
erty lying within incorporate towns and cities, to the treasurers

thereof, and to the treasurers of the commissioners of high-
ways all other taxes collected for road purposes. But by the
construction placed upon the act by the appellee, the collector
could not pay the money over, either to the treasurers of the
commissioners of highways, or to those of the towns and cities,
as the law would afford him no means for making a division,
and determining the relative proportion belonging to each.

The 82nd section of the present act provides that the taxes
shall be extended and collected the same as state and county
taxes, and the 84th section provides that the tax so collected
shall be paid to the treasurer of the commissioners of high-
ways (except as provided in the first clause of section 817, this
act). What is the proviso of the first clause? Why, that all
taxes collected from property lying within incorporated towns
and cities for "road purposes," shall be paid over to the
treasurers thereof.

In Baird v. The People, the court, in deciding the question,
remark: "There is, it is true, in this an apparent incongruity,
and it may be injustice, but we do not feel called upon to dis-
cuss either its wisdom or justice, but leave these for the con-
sideration of the legislature."

It is doubtless difficult to distribute equally the burdens of
creating and keeping up public highways between the citizens
of towns and cities and those who are not, and we are unable
to perceive that the construction for which the appellee con-
tends, would produce less hardship and injustice than the law
as it was settled in this case. Perhaps to meet this view of
the case the legislature so amended the former law by the
present act, as to provide that the money collected and paid
over to villages, cities and towns, might be expended on high-
ways beyond, as well as within their corporate limits. The
charter of the town of Flora imposes on it the duty of keeping
up its streets and alleys, and exempts its citizens from perform-
ing labor on roads outside of its corporate limits, or paying any
money therefor. The 166 Sec. Chap. 121, R. S. 1874, declares
that in no town or city incorporated under general or special
law, shall the citizens thereof be required to contribute labor
or money on property within the corporation, for the improve-

ment of roads in the county, different from that required in the charter; but they are required to work and pay a tax to improve the streets and roads, and such improvements as are specified in the charter, or within the limits of the corporation, so long as the charter or incorporation shall remain in force. This section has been in force for more than thirty years, and it clearly shows that the settled policy of our State is not to impose upon the citizens of incorporated towns and cities the duty of maintaining the roads and highways without, as well as within such towns and cities. It is true that this rule may in some instances impose a seemingly unjust hardship upon the inhabitants of the town who do not reside within the corporate limits of towns and cities existing therein; but a contrary rule would in more instances create greater hardship and injustice to the citizens of towns and cities which are charged with the duty of keeping the streets and alleys thereof in repair. We think the Circuit Court erred in holding the appellants' declaration insufficient in law, and in rendering judgment against them for costs. The judgment will be reversed and the cause remanded.

Reversed and remanded.